UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRANDON KEITH JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-3393** |
| **LT. JEREMY BOONE, ET. AL** | **SECTION "G" (4)** |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss ( Rec. doc. 22)** which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**. On March 15, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2]

**I.    Factual and Procedural Background**

    **A.    The Complaint**

The plaintiff, Brandon Keith Jackson ("Jackson"), is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie Louisiana. Jackson filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 against the defendants, Lt. Jeremy Boone ("Boone"), Sgt. Antwan Sauders, Lt. Jules, Herbert, Sgt. Gavin LeMaire and Sgt. Ervin Crain seeking damages for the alleged sexual harassment by Boone and denial of protection by the other officers.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 12. The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

Jackson alleges that on August 29, 2020, while he was in the shower, Lt. Boone came to the bars outside the tier and called his name. Jackson alleges that he walked up to the shower bars and Boone told him, " I see you have a nice size." Jackson alleges that he asked Boone what did he mean by the question? Boone allegedly replied, " you know what I'm talking about", as Boone looked down at Jackson's penis. Jackson alleged that he told Boone, " B*tch stop playing with me!" Jackson alleges that Boone replied, " If I play along, he will bring me some tobacco to dip, all I have to do is have my penis hard and show him my a** when he comes back up the tier from scanning his ID card." Jackson alleges that Boone kept coming in front of Jackson's cell sexually harassing Jackson every night Boone worked.

Jackson alleges that he told Boone that he would write Warden Beverly T. Kelly ("Kelly"), and Boone replied, "F*ck Beverly Kelly, what the f*ck she will do me?" Jackson contends that Boone further stated, "she not going believe you anyway." Jackson alleges that he tried to "sop" Major Kennedy ("Kennedy") that night because he said he had no time to speak with him. On August 30, 2020, Jackson contends that while in the shower, Boone returned to the bars and began sexually harassing him again. Specifically, Jackson alleges that Boone advised him "if your penis is not hard when I come back, I will bring you back to the cell myself." Jackson alleges that he was not hard, so Boone came and took him out of the shower and returned him to his cell. He alleges that before taking off his cuffs, Boone "grabbed his right a** cheek," and Jackson told him, "Man stop touching my ass." Boone then advised Jackson to shut up and told him "You for me, I do what I want." Jackson alleges that he told Boone, "alright, I will write that to Beverly Kelly too." Jackson alleges that he was sexually assaulted that night.

On September 20, 2020, Jackson alleges that after 7:20 p.m., he was in the shower drying off when Boone returned to Sleet R-4 and said, "I came at the right time." As the sergeant let him

on the tier, Boone saw Jackson putting his boxers on and said, "If you don't let me see it, I will walk you to your cell and slam you on your neck for refusing me." Jackson alleges thereafter that he then pulled his boxers back down where he could see his penis and Boone said, "that's more like it." Boone then said, "you have one more thing to do tonight, just sleep on your stomach." That night, Jackson alleges that he was coerced sexually and harassed.

On September 11, 2020, Jackson wrote four complaints on each incident happened. He alleges that despite his complaints, he was not separated from his aggressor in violation of PREA. He alleges that all of the incidents are captured on video.

Jackson alleges that he has not been protected, and that instead, Lieutenant Jules Herbert ("Herbert") retaliated against him by also sexually harassing him repeatedly for telling on Boone to Warden Kelly. Jackson alleges that he was not aware of how Herbert found out about the sexual harassment. However, Jackson avers that he was also threatened by Sergeant Gavin D. LeMaire ("LeMaire") on the morning of September 10, 2020.  Jackson alleges LeMaire threatened to take him to the infirmary where there were no cameras. LeMaire told Jackson that he should "drop the PREA thing" on Boone and Herbert because if he did not, then LeMaire would falsely allege that Jackson spit on him going back, and that he would break his face after slamming him on the ground.

Jackson replied that he would drop his PREA complaint and that he had no problem doing that. He alleges that ever since he filed the PREA complaint he was being retaliated against. He contends that the officers place drugs on him, and he never did drugs in jail, "ever!" As of October 10, 2020, Sergeant Antwan Sauders ("Sauders") walked up to the bars, looked at him in the shower, and stated, " I see what Lieutenant Boone and Herbert were talking about, you have a pretty d*ck, would you let me suck it?" Jackson told him "Get the f*ck on with that sh*t, I'm going to write

3

him up." Sauders replied that he would "beat [Jackson's] a** and rape him," and if he told anyone that he would "get him." Jackson, thereafter, alleges that he grabbed the shower rod and started hitting the window with it to get Boone's attention to report what he had just experienced. Instead, Jackson avers that he was handcuffed and taken out of the shower. According to Jackson, Boone told him, "Take my lic." Thereafter, Jackson complained that he wrote PREA complaints to Warden Kevin Luper ("Luper") and Warden Kelly. The next morning, Jackson also told Major Ernestine Smith ("Smith"). On October 17, 2020, Antwan Sauders retaliated and sexually harassed and assaulted him. He alleges that Sauders took his mat, blanket and sheets away since he "ratted on him." According to Sauders Jackson replied, "if you tell me you'll suck my d*ck, I will let you keep your blanket and sheets." Jackson alleges that he told him to "f*ck off."

Sauders then told Jackson that he would "call his other friend," and LeMaire returned to the cell threatening to take Jackson's mat, blanket, and sheets, which they did. LeMaire, then stated to Jackson "B*tch I am gonna show you, you gonna do as I say." He gave Jackson the mat, but allegedly stated that they would "deal with him that night." According to Jackson, Sauder agreed.

Jackson complains that he grew sick of them sexually harassing him, assaulting him, retaliating against him, and threatening him with bodily harm. Jackson thereafter alleges that he "pulled out [his] d*ck and offered it to the guards" who replied, "It's too late for that." Herbert replied that he was watching the whole time, and that he would "get [your] ass this morning". He later came back, shackled him, placed him on his knees, twisted his right foot, making the shackles dig into his skin causing him to yell in pain. Herbert told the other prison guards to take his books, stamps and anything else they feel that he doesn't' need. According to Jackson, Herbert told him to spit on Herbert, and then they pulled Jackson up after shaking down his cell.

4

Jackson avers that he was not entitled to relief because during feeding times, offenders were not allowed access to the officer dining area, or allowed to use the restrooms without prior permission, or duty status.[3]

**B.     The *Spears* Hearing**

Jackson testified that he is serving six years for simple burglary. He also indicated that he suffers with high blood pressure and had a stroke in 2014 which left him partially paralyzed on the right side. He recalled that a few weeks before he filed this suit, he was scheduled for a stress test at Lallie Kemp Hospital to assess heart issues occurring after the stroke.

On the day of the appointment, he woke up later than planned, and had to get dressed without using the bathroom or brushing his teeth. He was brought to the kitchen area to wait with another inmate. While there, he asked Sergeant Warner ("Warner") if he could use the bathroom that the kitchen workers use. Warner said no. Another lady, Sergeant Williams ("Williams") asked him his age, and when he told her, she asked Sergeant Warner if he could use the bathroom, but she still said no. Jackson stated that he then asked the Sergeants if he could go back to the dorm, and they said no.

Upon their arrival, the officers arrived to take Jackson to the infirmary before going to the hospital. Jackson stated that the officers took so long in the infirmary, that he decided to urinate through the gate into some plants in the infirmary. Another inmate saw it happen. He indicated that he got his hands and part of his clothes wet. The transport officers let him change his clothes, and he was taken to the hospital for his appointment.

---

[3]Rec. Doc. No. 1-1, p. 2; *see also*, Rec. Doc. No. 1-1, pp. 1 and 3.

5

Jackson claimed that he wrote a grievance complaint about Sergeant Warner because she should have let him go to the bathroom used by the inmates who work in the kitchen. When that complaint was denied, he did not appeal the decision to the DOC, and instead filed suit in federal court.

Jackson further stated that he sought a restraining order because he feared that Warner would retaliate against him for complaining about her actions. He stated that she did retaliate because she "wrote him up" on an aggravated disobedience disciplinary charge on January 3, 2016. He stated that she observed him talking "over the serving line." Jackson did not stop talking when she ordered him to do so and instead continued to talk until her second order to stop. Jackson did not answer the Court when asked whether the incident occurred. He simply said that Sergeant Warner was always harassing him like that. Jackson conceded that he was found guilty and did not appeal that ruling.

During the *Spears* Hearing, Jackson testified that he would dismiss his claim against defendant Sgt. Erwin Crain ("Crain").

C. **After the *Spears* Hearing**

A week after the *Spears* hearing, Jackson wrote a letter to the undersigned providing information indicating that Sgt. Jeremy Boone was not happy with being sued and mentioned to Jackson that Boone was under federal investigation. Rec. Doc. 15. He alleges that later that day during chow, Sgt. Boone on the other side of the door, unbeknownst to Jackson, reached out and grabbed his penis and buttocks with both hands and said, "welcome to my world." *Id*. Jackson alleges that he was shook and in fear for his life because Boone told him that if he reported this incident that Boone would have an "inmate stab [Jackson] up." *Id*. As a result of this incident,

6

Jackson requested help because he was not receiving any help from the wardens and indicated that no one else was helping him. *Id*.

### D. The Motion to Dismiss

The defendants filed a motion to dismiss seeking a dismissal of the claims against Boone, who, according to Jackson, sexually harassed him on three occasions, and sexually assaulted him on one occasion. Rec. Doc. 22-1. The defendants also seek dismissal of the claims against defendant Sauders who allegedly sexually harassed and/or verbally threatened him on multiple occasions, sexually assaulted him on one occasion, and retaliated against him. Further, the defendants also seek dismissal of the claim against Sauders who according to Jackson used excessive force against him on October 18, 2020. *Id*.

The defendants also seek dismissal of Jackson's claim against Herbert who allegedly sexually harassed and verbally threatened him, as well as retaliated against him. *Id*. Additionally, he contends that LeMaire also sexually harassed and verbally threatened him, as well as retaliated against him. Furthermore, Jackson alleges that Crain verbally threatened him. *Id*.

The defendants also contend that the court lacks subject matter jurisdiction to hear this case. The defendants raise the doctrine of sovereign immunity as a bar to the claim asserted by Jackson.

## II. Standard of Review

### A. Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other*

*grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).   However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).   It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.   *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B. Lack of Subject Matter Jurisdiction

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); see also Fed. R. Civ. P. 12(b)(1). A district court may dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, 281 F.3d at 161.

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995)). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does, in fact, exist. *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Ramming*, 281 F.3d at 161 (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### III.  Analysis

#### A.  Official Capacity Claims

The defendants contend that the Court does not have subject matter jurisdiction over the claims asserted by Jackson. Specifically, the defendants mention the issue of sovereign immunity, but fail to develop the issue. Nevertheless, because the issue is raised in the motion, the Court will address the issue first.

It is well settled that when a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional motion before addressing any attack on the merits. *Hill v. City of Pasadena*, 561 F.2d 606, 608 (5th. Cir. 1977) (per curiam). Therefore, the Court considers the defendants jurisdictional argument first.

Under Rule 12(b)(1), a court has wide discretion to review affidavits, and other documents outside of the pleadings, as well as to conduct a limited evidentiary hearing, in order to resolve

disputed jurisdictional facts. In such instances, a court's reference to evidence outside of the pleadings does not convert the motion to a Rule 56 summary judgment motion." *Martin v. Napolitano*, 11-CV-1368, 2012 WL 1413579, at *3 (W.D. La. Apr. 2, 2012), report and recommendation adopted, 11-CV-1368, 2012 WL 1413162 (W.D. La. Apr. 23, 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)); *see also Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations.").

Federal courts are courts of limited jurisdiction. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 513 (2006) (citation omitted). The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)).

It is axiomatic that the Eleventh Amendment bars citizens' suits in federal court against states, their alter egos, and state officials acting in their official capacity. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999) (citing *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986) ). "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." W*arnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996); *Kervin v. City of New Orleans*, No. 06-CV-3231, 2006 WL 2849861 at *2-4 (E.D. La. Sept.

28, 2006). In light of these authorities, it will be recommended that Defendants' Rule 12(b)(1) motion be granted and that Plaintiff's claims against all of the Defendants in their official capacity be dismissed without prejudice for want of jurisdiction. Jackson may be able to proceed in state court.

### B. Individual Capacity Claims

The defendants contend that Jackson's claims asserted against them are frivolous or fails to state a claim even if despicable they are not actionable. The defendants contend that the claims against Boone who allegedly sexually harassed Jackson on three occasions and sexually assaulted him on one occasion, is subject to dismissal. Next, defendants contend that Jackson's claims against Sauders (who allegedly sexually harassed and/or verbally threatened him on multiple occasions, sexually assaulted him on one occasion, retaliated against him and used excessive force against him) are subject to dismissal. The defendants also contend that the claims of sexual harassment and verbal threats by LeMaire and Herbert against Jackson are also subject to dismissal, and that Jackson agree to voluntarily dismiss the claim against defendant Crain.

Under § 1983, a claimant may sue a natural person in his individual capacity, his official capacity, or both. Some federal courts hold that a § 1983 plaintiff must designate the capacity in which the defendant is being sued and deem the defendant to have been sued in his official capacity if no such designation is made. *See* e.g., *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir.1995) (holding that "a plaintiff who wishes to sue a state official in his personal capacity must so specify in her complaint," so that "[i]f a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims"); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir.1999) (stating that "[g]enerally,

11

plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities.").

In the Fifth Circuit, however, if it is not clear from allegations of the complaint whether a defendant has been sued in his official or individual capacity, the court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued. *Forside v. Mississippi State Univ.*, 2002 WL 31992181, *5 n. 5 (N.D.Miss.2002) (noting that "[w]hile some circuits require rigid pleading requirements to specify individual or official capacity in section 1983 suits, ... the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings."); see also *Kentucky v. Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both . 'The course of proceedings' in such cases typically indicate the nature of the liability sought to be imposed.") (Citations omitted); *Hopkins v. Gusman*, 2007 WL 2407247, *4 (E.D.La.2007) (citing *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir.1973)) (looking to complaint to determine nature of plaintiff's claim in § 1983 case).

In considering the allegations in the complaint they suggest that Jackson seeks to hold each of the defendants, with the exception of Crain, liable in their individual capacities. The nature of the allegations are rather personal in nature. He further seeks a transfer and monetary compensation for the actions of the defendant.

Next, having determined that Jackson's complaint has implications of individual liability, the court will proceed with evaluating the claims as raised by the defendants.

### C. Sexual Assault Claims under §1983

Boone and Sauders contend that even though Jackson alleges that Boone made sexual remarks regarding the size of Jackson's penis, touched Jackson on his buttocks, allegedly peered at Jackson who was naked in the shower, made verbal comments about wanting to suck Jackson's penis, these actions do not legally constitute sexual assault according to §1983. Rec. Doc. 22-1. As a result, because Jackson's allegations do not legally constitute a sexual injury, he has not alleged an injury under the PLRA, such that his claims are against Boone and Sauders are subject to dismissal.

Jackson has not filed an opposition to the motion. His complaint, however, attempts to make allegations that he was sexually harassed and assaulted by Boone and Sauders. He therefore contends that he should be transferred to another facility and compensated for the actions of the defendants.

The Prison Litigation Reform Act of 1995 (the "PLRA") provides that no "Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in § 2246 of Title 18)." 42 U.S.C. § 1997e(e). The Fifth Circuit has consistently applied this rule and dismissed the constitutional claims of prisoners who do not allege any physical injury. *Anderson v. Kaydo*, 538 Fed. Appx. 409, 410 (5th Cir.2013). Therefore, unless the allegations set forth by Jackson constitute a sexual act, his claims are subject to dismissal. Title 18 § 2246 defines "sexual act" as follows:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

    (C)  the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

    (D)  the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

According to the complaint, the only physical contact alleged is the brief hand-to-butt contact while Defendant Boone was escorting Plaintiff, and the brief hand-to-butt contact when Defendant Sauders collected Plaintiff's mat from his cell. Jackson characterizes these incidents as "sexual assault". However, the four specific definitions of "sexual act" under § 2246 of Title 18 do not include gestures of the kind Jackson has alleged. Therefore, Jackson has failed to allege any facts which would characterize the physical contact by Boone.

Regarding Jackson's allegations against Sauders, the allegations consist of words of a sexual nature, which, although offensive, do not amount to a sexual act per the statute. For example, Jackson alleges that Sauders walked up to the bars and looked at him while he was naked in the shower and commented about the appearance of his penis, expressing a desire to suck it. Jackson was offended and told him to get away from him, threatening to write Sauders up. Sauders responded that if he did that, that he would "rape [Jackson's] anus." While if true, the words used by Sauders are threatening and sexually offensive, they do not constitute a "sexual act" under § 2246 of Title 18. Because no physical injury or sexual act occurred, Jackson's claims against Boone and Sauders are barred by 42 U.S.C. § 1997e(e), and the claims against them are subject to dismissal with prejudice for failure to state a claim upon which relief may be granted.

### D. Retaliation Claims

Next, Herbert, Sauders and LeMaire, seek dismissal of Jackson's claims against them for the alleged retaliation they engaged in because Jackson filed a PREA complaint against Boone. The defendants contend that the retaliation claim should be dismissed because they are conclusory in nature and therefore do not state a claim for which relief may be granted.

Jackson has not opposed the dismissal of the claims of retaliation.

Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). The law prohibits such retaliatory acts:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive, the complained of incident . . . would not have occurred. With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

*Clarke v. Stalder*, 121 F.3d 222, 231 (5th Cir. 1997), *vacated in part and reinstated in relevant part*, 154 F.3d 186, 191 (5th Cir. 1998) (citing *Bounds v. Smith*, 430 U.S. 817 (1977), *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), and *Woods*, 60 F.3d at 1164-66) (quotations and additional citations omitted).

The Fifth Circuit has expressed a caution for courts considering a prisoner's claim of retaliatory actions by prison officials, because "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at

1166 (citation and quotation omitted). The Fifth Circuit warned that "trial courts must carefully scrutinize these claims." *Id*.

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that <u>but for</u> the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . . The inmate must produce <u>direct evidence of motivation</u> or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Id*. (citations omitted) (emphasis added).

Based on these principals, to state a constitutional violation, a prisoner "must show that he suffered a qualifying adverse retaliatory act." *Morris*, 449 F.3d at 684. Without more than a *de minimis* impact, the prisoner has suffered no constitutional injury. *Id*. "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id*., at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). The plaintiff must demonstrate "more than his personal belief that he was the victim of retaliation." *Decker v. McDonald*, No. 09-27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (Craven, M.J.), *report adopted*, 2010 WL 1424292, at *1 (E.D. Tex. Apr. 7, 2010) (Folsom, J.). Mere conclusory allegations of retaliation will not suffice. *Decker*, at *15.

In this case, Jackson has fallen short of stating a claim of retaliation by Herbert, Sauders and Lemaire that a violation of his federal constitutional rights has occurred under the circumstances he describes. According to the complaint, Jackson's claim of retaliation against Herbert is as follows:

> Jackson alleges that he grew sick of them sexually harassing him, assaulting him, retaliating against him, and threatening him with bodily harm. Jackson thereafter alleges that he pulled out his d*ck and offered it to the guards who replied, "It's too late for that." Herbert replied that he was watching the whole time and that he would "get [your] ass this morning."

He later came back, shackled him, placed him on his knees, twisted his right foot making the shackles dig into his skin causing him to yell in pain. Herbert told the other prison guards to take his books, stamps and anything else they feel that he "doesn't' need." According to Jackson, Herbert told him to spit on Herbert and then they pulled him up after shaking down his cell.

The essence of Jackson's claim is that the cell shake down was a retaliatory act. Jackson fails to allege any specific constitutional right that he exercised which resulted in the retaliation. Certainly, offering his penis to the guards is not a protected act. Therefore, the "cell shakedown" could not constitute retaliation, and the claim against Herbert should be dismissed.

Next, Jackson seeks to allege that Sauders and LeMaire retaliated against him. The allegations against Sauders as described above were verbal in nature. Specifically, he alleges that Sauders peered at Jackson naked in the shower, commented on the attractiveness of his penis, and threatened to rape him if he told anyone. He further alleges that Sauders took his mat, blanket, and sheets away since he "ratted on him." According to Jackson, Sauders replied, "if you tell me you'll suck my d*ck, I will let you keep your blanket and sheets." Jackson alleges that he told him to "fuck off." However, these claims cannot constitute retaliation. There is no constitutional right to have his property nor does the shakedown of the cell amount to retaliation. *See Hand v. Rupert,* 2018 WL 1178086 (E.D. Texas 2018)

Like Sauders, the retaliation as alleged against LeMaire were verbal in nature. LeMaire allegedly told Jackson that he was going to show him. Further, according to Jackson, on the morning of September 10, 2020, LeMaire threatened to take him to the infirmary where there were no cameras. LeMaire allegedly told Jackson that he should "drop the PREA thing" on Boone and Herbert, because if he did not, then LeMaire would falsely allege that Jackson spit on him going back, and that he would break his face after slamming him on the ground.

17

Jackson does not allege that LeMaire actually did spit on him. Moreover, Jackson did not allege that he was taken to the infirmary or actually harmed by LeMaire in anyway. Further, he does not set forth an allegation as to the nature of the constitutional right he was attempting to exercise when Sauders made the statements. Again, the claims against LeMaire are frivolous in nature, and fail to state a claim for which relief may be granted.

Finally, in so far as Jackson argues that his rights under the Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. § 15601 et seq., were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape. See *Diamond v. Allen*, No. 7:14–CV–124, 2014 WL 6461730, at *4 (M.D.Ga. Nov.17, 2014) (citing cases); *Amaker v. Fischer*, No. 10–CV–0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (holding that the PREA cannot support such a cause of action by an inmate); *Simmons v. Solozano*, No. 3:14CV–P354–H, 2014 WL 4627278, at *4 (W.D.Ky. Sept.16, 2014) (holding that the PREA creates *233 no private right of action). Jackson has cited no case in support of his position; therefore, any claim raised under the PREA is properly dismissed as frivolous. Therefore, Jackson's retaliation claims against Herbert, Sauders and LeMaire are subject to dismissal for failure to state a claim.

### E. Excessive Force claim

Herbert contends that Jackson alleges that Sauders placed shackles on his right foot causing it to twist and dig into his skin. Jackson also alleges that Sauders pushed him down.

It is well settled that the pertinent Eighth Amendment proscription is only against "punishments" that are "cruel and unusual." Accordingly, "[w]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L.Ed.2d 156 (1992). The inquiry is whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include:

> 1. the extent of the injury suffered;
> 2. the need for the application of force;
> 3. the relationship between the need and the amount of force used;
> 4. the threat reasonably perceived by the responsible officials; and
> 5. any efforts made to temper the severity of a forceful response.

*Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir.1992); see also, *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir.1993); *Valencia v. Wiggins*, 981 F.2d 1440, 1446–47 (5th Cir.), *cert. denied*, 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993). Of course, these identified factors are not exclusive; each case must be judged on its own facts. *Rankin*, 5 F.3d at 107 n. 6.

As noted, "[a]ny injury that was suffered ... was minor." Obviously, the absence of serious injury is quite relevant to an excessive force inquiry but does not alone preclude relief. *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999. On the other hand, "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (quoting *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999).

In H*udson,* the Fifth Circuit held that an Eighth Amendment violation does not occur with "every malevolent touch by a prison guard." *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000. Even if the shackling punctured Jackson's skin, it is *de minimis* and therefore, the claim of excessive force does not state a claim for which relief may be granted.

## IV.     Recommendation

It is therefore **RECOMMENDED** that Plaintiff Brandon Keith Jackson's § 1983 claims against defendants, Lt. Jeremy Boone, Sgt. Antwan Sauders, Lt. Jules, Herbert, Sgt. Gavin LeMaire and Sgt. Ervin Crain be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 15th day of December 2022.

_____
KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable fourteenth- day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.